FILED: KINGS COUNTY CLERK 09/23/2020 03:47 PM    INDEX NO. 517976/2020
NYSCEF DOC. NO. 1                                    RECEIVED NYSCEF: 09/23/2020

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-----------------------------------------------------------------------X   Index #:
MUNTHER MAHMOUD,                                                           Date of Purchase:

                                    Plaintiffs,

                                                                          **SUMMONS**

                                                                          Plaintiff designates
                    -against-                                             KINGS COUNTY
                                                                          as place of trial

AKIMA GLOBAL SERVICES, LLC,
MICHAEL T. PHILLPS, TODD TRYON,                                           The basis of venue is:
DETENTION OFFICER CAPTAIN VOHWINKEL,                                       Plaintiff's Residence:
DETENTION OFFICER CAPTAIN TORRES,                                         643 74th Street
DETENTION OFFICER LIEUTENANT O'NEIL,                                       Brooklyn, New York 11209
DETENTION OFFICER LIEUTENANT SMITH,
DETENTION OFFICER LIEUTENANT HERITAGE,
DETENTION OFFICER LIEUTENANT SPIOTTA,
DETENTION OFFICER LIEUTENANT KOWALSKI,
DETENTION OFFICER LIEUTENANT SCIMIA,
BUFFALO FEDERAL DETENTION FACILITY
HEALTH SERVICES DIRECTOR JOHN/JANE DOE,
JOHN/JANE DOE PHYSICIANS,
JOHN/JANE DOE PHYSICIAN ASSISTANTS,
JOHN/JANE DOE NURSES, and
DETENTION OFFICERS JOHN DOE 1-5,

                                    Defendants.
-----------------------------------------------------------------------X

To the above named defendants:

        **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a
copy of your answer, or, if the complaint is not served with this summons, to serve a notice of
appearance on the Plaintiff's Attorneys within 20 days after the service of this summons exclusive of
the day of service (or within 30 days after the service is complete if this summons is not personally
delivered to you within the State of New York); and in case of your failure to appear or answer,
judgment will be taken against you by default for the relief demanded herein.

Dated: Garden City, New York
      September 23, 2020

**CHOPRA & NOCERINO, LLP.**
BY:

---------------------------------------------

BRETT L. KULLER, ESQ.
Attorneys for Plaintiff
Address and Telephone Number
100 Quentin Roosevelt Blvd., Unit 107
Garden City, New York 11530
(212) 868-3600
File No. 1496.RJBK

Defendants' Addresses:

AKIMA GLOBAL SERVICES, LLC,
c/o C T Corporation System
28 Liberty Street
New York, New York 10005

MICHAEL T. PHILLPS
c/o AKIMA GLOBAL SERVICES, LLC,
28 Liberty Street
New York, New York 10005

TODD TRYON
c/o AKIMA GLOBAL SERVICES, LLC,
28 Liberty Street
New York, New York 10005

DETENTION OFFICER CAPTAIN VOHWINKEL
c/o AKIMA GLOBAL SERVICES, LLC,
28 Liberty Street
New York, New York 10005

DETENTION OFFICER CAPTAIN TORRES
c/o AKIMA GLOBAL SERVICES, LLC,
28 Liberty Street
New York, New York 10005

FILED: KINGS COUNTY CLERK 09/23/2020 03:47 PM

NYSCEF DOC. NO. 1

INDEX NO. 517976/2020

RECEIVED NYSCEF: 09/23/2020

DETENTION OFFICER LIEUTENANT O'NEIL
c/o AKIMA GLOBAL SERVICES, LLC,
28 Liberty Street
New York, New York 10005

DETENTION OFFICER LIEUTENANT SMITH
c/o AKIMA GLOBAL SERVICES, LLC,
28 Liberty Street
New York, New York 10005

DETENTION OFFICER LIEUTENANT HERITAGE
c/o AKIMA GLOBAL SERVICES, LLC,
28 Liberty Street
New York, New York 10005

DETENTION OFFICER LIEUTENANT SPIOTTA
c/o AKIMA GLOBAL SERVICES, LLC,
28 Liberty Street
New York, New York 10005

DETENTION OFFICER LIEUTENANT KOWALSKI
c/o AKIMA GLOBAL SERVICES, LLC,
28 Liberty Street
New York, New York 10005

DETENTION OFFICER LIEUTENANT SCIMIA
c/o AKIMA GLOBAL SERVICES, LLC,
28 Liberty Street
New York, New York 10005

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

------------------------------------------------------------------------X    Index #:

MUNTHER MAHMOUD,                                    Date of Purchase:

Plaintiffs,

**Verified Complaint**

-against-

AKIMA GLOBAL SERVICES, LLC,
MICHAEL T. PHILLPS, TODD TRYON,
DETENTION OFFICER CAPTAIN VOHWINKEL,
DETENTION OFFICER CAPTAIN TORRES,
DETENTION OFFICER LIEUTENANT O'NEIL,
DETENTION OFFICER LIEUTENANT SMITH,
DETENTION OFFICER LIEUTENANT HERITAGE,
DETENTION OFFICER LIEUTENANT SPIOTTA,
DETENTION OFFICER LIEUTENANT KOWALSKI,
DETENTION OFFICER LIEUTENANT SCIMIA,
BUFFALO FEDERAL DETENTION FACILITY
HEALTH SERVICES DIRECTOR JOHN/JANE DOE,
JOHN/JANE DOE PHYSICIANS,
JOHN/JANE DOE PHYSICIAN ASSISTANTS,
JOHN/JANE DOE NURSES, and
DETENTION OFFICERS JOHN DOE 1-5,

Defendants.

------------------------------------------------------------------------X

The plaintiff, **MUNTHER MAHMOUD**, by his attorneys, CHOPRA & NOCERINO, LLP,

complaining of the defendants herein, respectfully shows to this Court and alleges as follows:

**PRELIMINARY STATEMENT**

1.       On June 9, 2016, Plaintiff was a detainee at **BUFFALO FEDERAL DETENTION**

**FACILITY**. Upon information and belief, on June 9, 2016, defendant **AKIMA GLOBAL SERVICES,**

**LLC,** by and through its agents and/or employees, operated **BUFFALO FEDERAL DETENTION**

**FACILITY** during the relevant timeframe.

2.    On June 9, 2016, Plaintiff was told to go back to his cell due to a verbal confrontation that had occurred with another detainee. Plaintiff went back to his cell. No emergency button had been pressed at the time as there were no threats of violence or acts that would suggest Plaintiff was in a dangerous state of mind. Plaintiff reached his cell and began to wait for the detention officers, was told to wait in his cell, and then several minutes later an emergency button was pressed unpredictably. At that point several detention officers began to come into the unit and surrounded Plaintiff's cell for no reason, as he was not a threat in any manner and had no reputation of such.

3.    Upon entering Plaintiff's cell, the detention officers asked that Plaintiff cooperate and put his hands behind his back so that they could cuff him and transport him to another part of the detention center. Plaintiff immediately complied, turned around without issue, and was cuffed by the detainee officers.

4.    The detention officers then began getting riled up and talking disrespectfully to Plaintiff without provocation and Plaintiff attempted to defuse the situation by speaking calmly and cooperating with everything that had been asked of him. Plaintiff was not known as a violent man or threat to the officers and he tried to explain they needed to calm themselves of their conduct, verbal abuse and actions, as they were completely uncalled for.

5.    Then unexpectedly, the detainee officers negligently grabbed Plaintiff's neck, back and arms and jerked, shoved, quickly moved and harshly thrusted Plaintiff's neck and back forward while lifting his cuffed wrists/arms in an upward fashion with extreme force. The movement was so harsh that Plaintiff begged for them to release the tension due to the excruciating pain he had immediately felt and continued to feel.

6.    While in the distressed position the detention officers continued to toy with Plaintiff by negligently and violently jerking and propelling his arms even further upward so that the pain was

unbearable. They jerked his body back and forth until injuries ensued.

7.      Plaintiff was then escorted to the Segregated Housing Unit (the SHU/the Box). The officers refused to call for medical assistance. He was denied proper medical care, treated as if he was acting, was not injured or faking it.

8.      As a result of the negligent, unnecessary, reckless, and/or excessive use of force, Plaintiff sustained bilateral shoulder tears and impingement, a right knee tear, fractures to the spine, cervical and lumbar herniations with tearing, radiculopathy and impingement.

9.      Eventually, plaintiff was treated at the infirmary, but Plaintiff received minimal care and was unable to obtain proper treatments.

10.     Despite Plaintiff's objective serious medical condition, the detention officers would continuously pass comments, verbally threaten, verbally abuse, and taunt Plaintiff continuously. While plaintiff was in the SHU and eventually transferred to his cell, detention officers continuously ignored his requests to seek medical attention, and therefore, many times medical attention was never provided despite the overwhelming pain he continued to experience.

11.     As a result of the negligent, unnecessary and/or excessive use of force, (1) Plaintiff underwent right shoulder surgery on November 27, 2017; (2) Plaintiff underwent cervical spine surgery on April 26, 2018; and (3) Plaintiff underwent lumbar spine surgery on July 10, 2018. Multiple additional surgeries will be required in the future as a result of the subject injuries sustained by Plaintiff.

## THE PARTIES

12.     At all times alleged herein, plaintiff **MUNTHER MAHMOUD** was a resident of County of Kings, City and State of New York.

13.     Upon information and belief, defendant **AKIMA GLOBAL SERVICES, LLC,** is a foreign limited liability company duly authorized to conduct business in the state of New York.

FILED: KINGS COUNTY CLERK 09/23/2020 03:47 PM    INDEX NO. 517976/2020
NYSCEF DOC. NO. 1    RECEIVED NYSCEF: 09/23/2020

14.    At all times hereinafter mentioned, defendant **AKIMA GLOBAL SERVICES, LLC,** transacted business within the State of New York; regularly did or solicited business within the State of New York or engaged in other persistent courses of conduct and/or derived substantial revenue from goods used or consumed or services rendered in the State of New York and expected or should have reasonably expected its acts to have consequences in the State of New York and/or derived substantial revenue from interstate or international commerce.

15.    Upon information and belief, defendant **AKIMA GLOBAL SERVICES, LLC** supplied employees, detention officers and medical personnel to Buffalo Federal Detention Facility during the relevant timeframe.

16.    Upon information and belief, defendant **AKIMA GLOBAL SERVICES, LLC,** by and through its agents and/or employees, operated Buffalo Federal Detention Facility during the relevant timeframe.

17.    At all times herein, upon information and belief, Defendant, Michael T. Phillips was the Field Office Director at the BUFFALO FEDERAL DETENTION FACILITY.

18.    At all times herein, upon information and belief, Defendant, Michael T. Phillips was employed at BUFFALO FEDERAL DETENTION FACILITY.

19.    At all times alleged herein, upon information and belief, Defendant, Michael T. Phillips was an employee of AKIMA GLOBAL SERVICES LLC.

20.    At all times herein, upon information and belief, Todd Tryon was a Supervisory Detention and Deportation Officer at BUFFALO FEDERAL DETENTION FACILITY.

21.    At all times herein, upon information and belief, Defendant, Todd Tryon was employed at BUFFALO FEDERAL DETENTION FACILITY.

22.    At all times alleged herein, upon information and belief, Defendant, Todd Tryon was an

employee of AKIMA GLOBAL SERVICES LLC.

23.     Upon information and belief, as the Officer-In-Charge (OIC) for an ICE Detention Facility,

the Supervisory Detention and Deportation Officers will manage and provide oversight and supervision

of a staff of subordinate supervisors responsible for the full-range of detention facility operations.

Typical work assignments include but are not limited to:

- Coordinating matters pertaining to the facility with the Office of the Inspector General (OIG), Department of Homeland Security (DHS), Department or Justice (DOJ), Citizenship and Immigration Services (CIS), Office of the Principal Legal Advisor (OPLA), and the ICE Health Service Corp (IHSC);
- Managing multi-million-dollar law enforcement contracts for off-site detainee housing facilities through Inter-Governmental Service Agreements;
- Ensuring the care and maintenance of facilities, and managing regional bed space to include the oversight or contract facilities;
- Overseeing all public relations activities for the center to include foreign, other federal, state and local dignitaries, media, non-governmental organizations; and
- Performing the human resource functions relative to the staff supervised including performance management, training, effecting disciplinary actions, and other administrative matters.
- Ensuring compliance with all applicable rules, laws, and regulations;
- Ensuring detainees receive proper medical attention; and
- Ensuring the detainees' rights are not violated.

24.     Upon information and belief, the Officers in Charge also have the duty and power to require

reports from all individuals rendering services at the BUFFALO FEDERAL DETENTION FACILITY,

to inquire into any improper conduct alleged to have been committed by any person at the detention

facility, to require psychological screening of all applicants, to bar and remove the appointment of any

person to the position of detention officer, supervisor or lieutenant if said person has engaged in

wrongful conduct, to require detainees medical  diagnoses and treatment to outside hospitals, to require

a background investigation of all applicants, to require a thorough investigation to determine the

character and fitness of all applicants, to require all new officers to participate in and satisfactorily

complete all requirements of a traineeship program before advancing to detention officer, to ensure

compliance with all applicable rules, laws, and regulations, and to require all appointees to serve and

satisfactorily complete a probationary period before advancing from trainee to detention officer.

25.     At all times alleged herein, upon information and belief, Defendant, Lieutenant Detention Officer Scimia was employed at BUFFALO FEDERAL DETENTION FACILITY.

26.     At all times alleged herein, upon information and belief, Defendant, Lieutenant Detention Officer Scimia was an employee of AKIMA GLOBAL SERVICES LLC.

27.     On June 9, 2016, upon information and belief, Lieutenant Detention Officer Scimia was assigned to BUFFALO FEDERAL DETENTION FACILITY detention cell block unit B-1 and had access to Plaintiff's bed/cell number 107A. As a higher-ranking officer, Lieutenant Detention Officer Scimia was responsible for the supervision and conduct of other detention officers within the same cell block and any other that may have come to the said cell block on the date of incident; for supervising the movement and activities of Plaintiff and other detainees at BUFFALO FEDERAL DETENTION FACILITY; for making periodic rounds of assigned areas; for conducting searches for contraband; for removing detainees from their cells and/or transporting them; for disciplinary measures of detainee; for maintaining order within the facility; for preparing reports as necessary; for complying with all applicable rules, laws and regulations; for ensuring compliance with all applicable rules, laws and regulations, and for advising detainees on the rules and regulations governing the operation of the facility and assist them in resolving problems.

28.     At all times alleged herein, upon information and belief, Defendant, Lieutenant Detention Officer O'Neil was employed at BUFFALO FEDERAL DETENTION FACILITY.

29.     At all times alleged herein, upon information and belief, Defendant, Lieutenant Detention Officer O'Neil was an employee of AKIMA GLOBAL SERVICES LLC.

30.     On June 9, 2016, upon information and belief, Lieutenant Detention Officer O'Neil was assigned to BUFFALO FEDERAL DETENTION FACILITY detention cell block unit B-1 and had

access to Plaintiff's bed/cell number 107A. As a higher-ranking officer, Lieutenant Detention Officer O'Neil was responsible for the supervision and conduct of other detention officers within the same cell block and any other that may have come to the said cell block on the date of incident; for supervising the movement and activities of Plaintiff and other detainees at BUFFALO FEDERAL DETENTION FACILITY; for making periodic rounds of assigned areas; for conducting searches for contraband; for removing detainees from their cells and/or transporting them; for disciplinary measures of detainee; for maintaining order within the facility; for preparing reports as necessary; for complying with all applicable rules, laws and regulations; for ensuring compliance with all applicable rules, laws and regulations, and for advising detainees on the rules and regulations governing the operation of the facility and assist them in resolving problems.

31.    At all times alleged herein, upon information and belief, Defendant, Captain Detention Officer Vohwinkel was employed at BUFFALO FEDERAL DETENTION FACILITY.

32.    At all times alleged herein, upon information and belief, Defendant, Captain Detention Officer Vohwinkel was an employee of AKIMA GLOBAL SERVICES LLC.

33.    On June 9, 2016, upon information and belief, Captain Detention Officer Vohwinkel was assigned to BUFFALO FEDERAL DETENTION FACILITY detention cell block unit B-1 and had access to Plaintiff's bed/cell number 107A. As a higher-ranking officer, Captain Detention Officer Vohwinkel was responsible for the supervision and conduct of other detention officers within the same cell block and any other that may have come to the said cell block on the date of incident; for supervising the movement and activities of Plaintiff and other detainees at BUFFALO FEDERAL DETENTION FACILITY; for making periodic rounds of assigned areas; for conducting searches for contraband; for removing detainees from their cells and/or transporting them; for disciplinary measures of detainee; for maintaining order within the facility; for preparing reports as necessary; for complying with all

applicable rules, laws and regulations; for ensuring compliance with all applicable rules, laws and regulations, and for advising detainees on the rules and regulations governing the operation of the facility and assist them in resolving problems.

34.     At all times alleged herein, upon information and belief, Defendant, Captain Detention Officer Torres was employed at BUFFALO FEDERAL DETENTION FACILITY.

35.     At all times alleged herein, upon information and belief, Defendant, Captain Detention Officer Torres was an employee of AKIMA GLOBAL SERVICES LLC.

36.     On June 9, 2016, upon information and belief, Captain Detention Officer Torres was assigned to BUFFALO FEDERAL DETENTION FACILITY detention cell block unit B-1 and had access to Plaintiff's bed/cell number 107A. As a higher-ranking officer, Captain Detention Officer Torres was responsible for the supervision and conduct of other detention officers within the same cell block and any other that may have come to the said cell block on the date of incident; for supervising the movement and activities of Plaintiff and other detainees at BUFFALO FEDERAL DETENTION FACILITY; for making periodic rounds of assigned areas; for conducting searches for contraband; for removing detainees from their cells and/or transporting them; for disciplinary measures of detainee; for maintaining order within the facility; for preparing reports as necessary; for complying with all applicable rules, laws and regulations; for ensuring compliance with all applicable rules, laws and regulations, and for advising detainees on the rules and regulations governing the operation of the facility and assist them in resolving problems.

37.     At all times alleged herein, upon information and belief, Defendant, Lieutenant Detention Officer Smith was employed at BUFFALO FEDERAL DETENTION FACILITY.

38.     At all times alleged herein, upon information and belief, Defendant, Lieutenant Detention Officer Smith was an employee of AKIMA GLOBAL SERVICES LLC.

39.     On June 9, 2016, upon information and belief, Lieutenant Detention Officer Smith was

assigned to BUFFALO FEDERAL DETENTION FACILITY detention cell block unit B-1 and had

access to Plaintiff's bed/cell number 107A.  As a higher-ranking officer, Lieutenant Detention Officer

Smith was responsible for the supervision and conduct of other detention officers within the same cell

block and any other that may have come to the said cell block on the date of incident; for supervising

the movement and activities of Plaintiff and other detainees at BUFFALO FEDERAL DETENTION

FACILITY; for making periodic rounds of assigned areas; for conducting searches for contraband; for

removing detainees from their cells and/or transporting them; for disciplinary measures of detainee; for

maintaining order within the facility; for preparing reports as necessary; for complying with all

applicable rules, laws and regulations; for ensuring compliance with all applicable rules, laws and

regulations, and for advising detainees on the rules and regulations governing the operation of the facility

and assist them in resolving problems.

40.     At all times alleged herein, upon information and belief, Defendant, Lieutenant Detention

Officer Heritage was employed at BUFFALO FEDERAL DETENTION FACILITY.

41.     At all times alleged herein, upon information and belief, Defendant, Lieutenant Detention

Officer Heritage was an employee of AKIMA GLOBAL SERVICES LLC.

42.     On June 9, 2016, upon information and belief, Lieutenant Detention Officer Heritage was

assigned to BUFFALO FEDERAL DETENTION FACILITY detention cell block unit B-1 and had

access to Plaintiff's bed/cell number 107A.  As a higher-ranking officer, Lieutenant Detention Officer

Heritage was responsible for the supervision and conduct of other detention officers within the same

cell block and any other that may have come to the said cell block on the date of incident; for supervising

the movement and activities of Plaintiff and other detainees at BUFFALO FEDERAL DETENTION

FACILITY; for making periodic rounds of assigned areas; for conducting searches for contraband; for

removing detainees from their cells and/or transporting them; for disciplinary measures of detainee; for maintaining order within the facility; for preparing reports as necessary; for complying with all applicable rules, laws and regulations; for ensuring compliance with all applicable rules, laws and regulations, and for advising detainees on the rules and regulations governing the operation of the facility and assist them in resolving problems.

43.     At all times alleged herein, upon information and belief, Defendant, Lieutenant Detention Officer Spiotta was employed at BUFFALO FEDERAL DETENTION FACILITY.

44.     At all times alleged herein, upon information and belief, Defendant, Lieutenant Detention Officer Spiotta was an employee of AKIMA GLOBAL SERVICES LLC.

45.     On June 9, 2016, upon information and belief, Lieutenant Detention Officer Spiotta was assigned to BUFFALO FEDERAL DETENTION FACILITY detention cell block unit B-1 and had access to Plaintiff's bed/cell number 107A. As a higher-ranking officer, Lieutenant Detention Officer Spiotta was responsible for the supervision and conduct of other detention officers within the same cell block and any other that may have come to the said cell block on the date of incident; for supervising the movement and activities of Plaintiff and other detainees at BUFFALO FEDERAL DETENTION FACILITY; for making periodic rounds of assigned areas; for conducting searches for contraband; for removing detainees from their cells and/or transporting them; for disciplinary measures of detainee; for maintaining order within the facility; for preparing reports as necessary; for complying with all applicable rules, laws and regulations; for ensuring compliance with all applicable rules, laws and regulations, and for advising detainees on the rules and regulations governing the operation of the facility and assist them in resolving problems.

46.     At all times alleged herein, upon information and belief, Defendant, Lieutenant Detention Officer Kowalski was employed at BUFFALO FEDERAL DETENTION FACILITY.

47. At all times alleged herein, upon information and belief, Defendant, Lieutenant Detention Officer Kowalski was an employee of AKIMA GLOBAL SERVICES LLC.

48. On June 9, 2016, upon information and belief, Lieutenant Detention Officer Kowalski was assigned to BUFFALO FEDERAL DETENTION FACILITY detention cell block unit B-1 and had access to Plaintiff's bed/cell number 107A. As a higher-ranking officer, Lieutenant Detention Officer Kowalski was responsible for the supervision and conduct of other detention officers within the same cell block and any other that may have come to the said cell block on the date of incident; for supervising the movement and activities of Plaintiff and other detainees at BUFFALO FEDERAL DETENTION FACILITY; for making periodic rounds of assigned areas; for conducting searches for contraband; for removing detainees from their cells and/or transporting them; for disciplinary measures of detainee; for maintaining order within the facility; for preparing reports as necessary; for complying with all applicable rules, laws and regulations; for ensuring compliance with all applicable rules, laws and regulations, and for advising detainees on the rules and regulations governing the operation of the facility and assist them in resolving problems.

49. At all times alleged herein, upon information and belief, Defendants, Detention Officers O'Neil, Scimia, Smith, Heritage, Spiotta, Kowalski, Vohwinkel, Torres, and John Doe 1-5 were detention officers at BUFFALO FEDERAL DETENTION FACILITY, and employees of, AKIMA GLOBAL SERVICES LLC. Said defendants were assigned to detention cell block unit B-1 and had access to Plaintiff's bed/cell number 107A. As detention officers, said defendants were responsible for the custody, care and control of Plaintiff and other detainees at BUFFALO FEDERAL DETENTION FACILITY; for protecting the security, safety and well-being of Plaintiff and other detainees at BUFFALO FEDERAL DETENTION FACILITY; for supervising the movement, transport and activities of Plaintiff; for making periodic rounds of assigned areas; for getting detainees to medical care

when necessary; for conducting searches for contraband; for maintaining order within the facility; for preparing reports as necessary; for complying with all applicable rules, laws and regulations; for ensuring compliance with all applicable rules, laws and regulations, and for advising detainees on the rules and regulations governing the operation of the facility and assist them in resolving problems.

50.     At all times alleged herein, upon information and belief, Defendants, John/Jane Doe Physicians, John/Jane Doe Physician Assistants, John/Jane Doe Nurse Administrators, John/Jane Doe Nurse Practitioners, and John/Jane Doe Nurses, were members of the medical staff assigned to the BUFFALO FEDERAL DETENTION FACILITY clinic/infirmary on June 9, 2016, and were employees of AKIMA GLOBAL SERVICES LLC.  Said defendants were responsible for providing competent and thorough professional services in all aspects of Plaintiff's health care on June 9, 2016, including but not limited to taking an accurate patient history; taking an accurate history of events leading up to the injuries; performing physical examinations and recording results; ordering blood tests, x-rays and other tests to supplement the examination and assist in evaluating Plaintiff's signs, symptoms and problems; evaluating Plaintiff's condition and making a diagnosis; discussing findings with Plaintiff and making recommendations; administering treatment and prescribing medications and other treatments to treat Plaintiff's health problems; conducting follow-up examinations and tests to reassess Plaintiff's condition and revise treatment in response to findings; conducting sick calls to further evaluate Plaintiff's condition; referring Plaintiff to medical specialists, hospitals, and other treatment providers; for complying with all applicable rules, laws and regulations; for ensuring compliance with all applicable rules, laws and regulations; assigning, coordinating and supervising the treatment and care of Plaintiff by medical, nursing, patient care and other support staff; and approve the discharge and planning of Plaintiff following the subject use of force.

51.     At all times alleged herein, upon information and belief, Defendant Health Services

Director John/Jane Doe, was the BUFFALO FEDERAL DETENTION FACILITY's highest medical authority, and an employee of AKIMA GLOBAL SERVICES LLC. Defendant Health Services Director reported to superintendents and indirectly to regional medical directors. Defendant Health Services Director was responsible for supervising the medical staff, all aspects of detainee health care, and scheduling medical coverage. Defendant Health Services Director was responsible for supervising John/Jane Doe Physicians, John/Jane Doe Physician Assistants, John/Jane Doe Nurse Administrators, John/Jane Doe Nurse Practitioners, and John/Jane Doe Nurses on June 9, 2016. Defendant Health Services Director was responsible for supervising Plaintiff's health care and access to timely and appropriate medical treatment on June 6, 2016 and thereafter, as well as for complying with all applicable rules, laws and regulations, and for ensuring compliance with all applicable rules, laws and regulations.

52. At all times alleged herein, Defendants were entrusted with the custody and care of those persons detained and confined to the BUFFALO FEDERAL DETENTION FACILITY, including but not limited to the Plaintiff.

53. At all times alleged herein, Defendants, individually and collectively, engaged in the alleged misconduct.

54. At all times alleged herein, Defendants knowingly participated in, acquiesced to, contributed to, encouraged, authorized (either expressly or implicitly), approved, ratified and/or were deliberately indifferent to the misconduct alleged.

### STATEMENT OF FACTS

55. At all times alleged herein, Plaintiff was a detainee confined to the custody and care of, the BUFFALO FEDERAL DETENTION FACILITY, and AKIMA GLOBAL SERVICES LLC.

56. On or about June 9, 2016, Plaintiff was told to go back to his cell due to a verbal

confrontation that had occurred in B-1 cell block with another detainee. Plaintiff was told to go to this cell and complied without confrontation. No emergency button had been pressed at the time as there were no threats of violence or acts that would suggest Plaintiff was in a dangerous state of mind. Plaintiff reached his cell and began to wait for the detention officer, was told to wait in his cell, and then several minutes later an emergency button was pressed unpredictably. At that point several detention officers began to come into the unit and surrounded Plaintiff's cell for no reason, as he was not a threat in any manner and had no reputation of such.

57.    Upon information and belief, Defendants, Lieutenant Detention Officer Scimia, Lieutenant Detention Officer O'Neil, Lieutenant Detention Officer Smith, Lieutenant Detention Officer Heritage, Lieutenant Detention Officer Spiotta, Lieutenant Detention Officer Kowalski, Captain Detention Officer Torres and Captain Detention Officer Vohwinkel, all other detention officer defendants, and Detention Officers John Doe 1-5 (collectively referred to as the "detention officers") were all assigned to the B-1 cell block and area in which Plaintiff was being held and housed.

58.    Upon entering Plaintiff's cell, they asked that Plaintiff cooperate and put his hands behind his back so that they could cuff him and transport him to another part of the detention center. Plaintiff immediately complied, turned around without issue, and was cuffed by the detainee officers. The detention officers began getting riled up and talking disrespectfully to Plaintiff without provocation and Plaintiff attempted to diffuse the situation by speaking calmly and cooperating with everything that had been asked of him. Plaintiff was not known as a violent man or threat to the officers and he tried to explain they needed to calm themselves of their conduct, verbal abuse and actions, as they were completely uncalled for. Then unexpectedly, the detainee officers negligently grabbed Plaintiff's neck, back and arms and forcibly jerked, shoved, quickly moved and harshly thrusted Plaintiff's neck and back forward while lifting his cuffed wrists/arms in an upward fashion with extreme force. The

movement was so harsh that Plaintiff begged for them to release the tension due to the excruciating pain he had immediately felt and continued to feel.

59.     While in the distressed position the detention officers continued to toy with Plaintiff by negligently and violently jerking and propelling his arms even further upward so that the pain was unbearable. They jerked his body back and forth until the injuries ensued. Plaintiff was then escorted to the Segregated Housing Unit (the SHU/the Box). The officers refused to call for medical assistance. Plaintiff was left injured and without proper food for hours upon hours and days thereafter. He was denied proper medical care initially, treated as if he was acting, was not injured or faking it.

60.     Despite Plaintiff's objectively serious medical condition, Defendants, Health Service Director, John/Jane Doe Physicians, John/Jane Doe Physician Assistants, John/Jane Doe Nurse Administrators, John/Jane Doe Nurse Practitioners, and John/Jane Doe Nurses, on duty that evening failed to provide Plaintiff with any treatment whatsoever.

61.     As a result of the abuse, plaintiff refused to eat and began to strike due to the unbelievable treatment he had endured. Eventually other officials realized the entire event was wrongful and began to help him get the care and food he required.

62.     Upon information and belief, the following named defendants had a role or partook in the abuse that occurred on June 9, 2016: Lieutenant Detention Officer Scimia, Lieutenant Detention Officer O'Neil, Lieutenant Detention Officer Smith, Lieutenant Detention Officer Heritage, Lieutenant Detention Officer Spiotta, Lieutenant Detention Officer Kowalski, Captain Detention Officer Torres and Captain Detention Officer Vohwinkel, and Detention Officers John Doe 1-5. Plaintiff knows there were others involved but cannot recall their names and does not have enough information to properly identify them herein, hence the need for John Doe 1-5.

63.     As a result of the negligent, reckless, unnecessary and/or excessive use of force, Plaintiff

sustained bilateral shoulder tears and impingement, right knee tear, fractures to the spine, cervical and lumbar herniations with tearing, radiculopathy and impingement.

64.    Eventually, plaintiff was treated at the infirmary, but Plaintiff received minimal care and was unable to obtain proper treatments.

65.    Despite Plaintiff's objective serious medical condition, the detention officers would continuously pass comments, verbally threaten, verbally abuse, make racial slurs and taunt Plaintiff continuously. While plaintiff was in the SHU and eventually transferred to his cell, detention officers continuously ignored his requests to seek medical attention, and therefore, many times medical attention was never provided despite the overwhelming pain he continued to experience.

66.    As a result of the defendants' actionable conduct, (1) Plaintiff underwent right shoulder surgery on November 27, 2017; (2) Plaintiff underwent cervical spine surgery on April 26, 2018; and (3) Plaintiff underwent lumbar spine surgery on July 10, 2018. Multiple additional surgeries will be required in the future.

67.    Plaintiff's injuries were critical and of an objectively serious nature.

68.    As described above, the defendants collectively and consciously disregarded and were deliberately indifferent to Plaintiff's health, safety, and well-being.

69.    As described above, the defendants subjected Plaintiff to cruel, unusual, inhumane, and degrading treatment.

70.    As described above, the defendants consciously disregarded and were deliberately indifferent to Plaintiff's objectively serious medical condition following the subject abuse.

71.    The detention officers subjected Plaintiff to unnecessary and wanton infliction of pain.

72.    The detention officers' conduct was grossly disproportionate to the severity of the circumstances then and there existing.

Case 1:21-cv-00013-ERK-JRC    Document 1-1    Filed 01/04/21    Page 20 of 31 PageID #: 2020

73.     The detention officers lacked any form of justifiable cause or reason to use physical force and/or inflict harsh violent movement/conduct upon Plaintiff in order to maintain order as Plaintiff was restrained by handcuffs, and was not involved in a fight, posed no threat to the detention officers, and did not disregard a lawful order.

74.     The detention officers lacked any form of justifiable cause or reason to use physical force and/or inflict harsh violent movement/conduct upon plaintiff in order to enforce observance of discipline as Plaintiff was handcuffed and did not pose a threat to the detention officers, nor did he disregard a lawful order.

75.     The detention officers lacked any form of justifiable cause or reason to use physical force and/or inflict harsh violent movement/conduct upon plaintiff in order to secure or control Plaintiff or the subject location as Plaintiff was handcuffed, and was not involved in a fight, did not pose danger or a threat to the officers or detainees at the time of the incident. Plaintiff did not violate or disregard a lawful order.

76.     At no point during the time period mentioned herein did Plaintiff neglect or refuse an order of a detention officer or violate a directive, rule or regulation of BUFFALO FEDERAL DETENTION FACILITY.

77.     At no point during the time period mentioned herein did Plaintiff resist or disobey any lawful command or a detention officer.

78.     At no point during the time period mentioned herein did Plaintiff offer violence to any officer or detainee.

79.     At no point during the time period mentioned herein did Plaintiff injure or attempt to injure a detainee, a detention officer or any property of BUFFALO FEDERAL DETENTION FACILITY.

80.     At no point during the time period mentioned herein did Plaintiff attempt to escape.

81.    At no point during the time period mentioned herein did Plaintiff attempt to lead or take part in a revolt or insurrection.

82.    Following the subject incident, upon information and belief, and in attempt to cover up and/or conceal the unlawful conduct complained of herein, the detention officers, the infirmary staff, the officers in charge of the SHU, and all remaining defendants named in this action, acting individually and/or in concert and conspiracy with one another, all intentionally failed to report and/or misrepresented the events leading up to and during the subject incident, each parties' involvement in same, and the injuries and condition of Plaintiff as a result of the abuse sustained.

83.    Following the subject incident, upon information and belief, and in attempt to cover up and/or conceal the unlawful conduct complained of herein, the detention officers, the infirmary staff, the officers in charge of the SHU, and all remaining defendants named in this action, acting individually and/or in concert and conspiracy with one another, drafted, executed and filed knowingly false statements and reports wherein these defendants and their supervisors dishonestly stated that Plaintiff posed a danger to officers, others and/or the facility; that plaintiff was noncompliant with instructions, was disobeying authority, refused to obey lawful order; that Plaintiff caused and/or threatened to cause serious physical injury to an officer or departmental property; and/or these defendants and their supervisors made other knowingly false statements about the incident in official reports, to investigators, in disciplinary proceedings commenced against them, and in criminal proceedings commenced against them.

84.    As part of said conspiracy and cover-up, upon information and belief, these defendants confiscated Plaintiff's belongings, changed his cell, closed his door during recreational time to harass him and prevent him from obtaining belongings or eating food.

85.    As part of the said conspiracy and cover-up, upon information and belief, a disciplinary

infraction and/or citation and/or slip was issued to Plaintiff. To justify the infraction, the detention officers falsely claimed that Plaintiff was noncooperative with detention officer Scimia and reasonable force was utilized to gain control of Plaintiff.

86.     As part of the said conspiracy and cover-up, upon information and belief, a disciplinary infraction and/or citation and/or slip was issued to Plaintiff. To justify the infraction, the detention officers falsely claimed that Plaintiff was noncooperative with detention officers within the B-1 Unit and reasonable force was utilized to gain control of Plaintiff.

87.     As part of the said conspiracy and cover-up, upon information and belief, a disciplinary infraction and/or citation and/or slip was issued to Plaintiff. To justify the infraction, the detention officers falsely claimed that Plaintiff was noncooperative with detention officers that were present on the date of incident and reasonable force was utilized to gain control of Plaintiff.

88.     As part of the said conspiracy and cover-up, upon information and belief, a disciplinary infraction and/or citation and/or slip was issued to Plaintiff. To justify the infraction, the detention officers falsely claimed that Plaintiff was noncooperative with infirmary personnel, the SHU officers, the Health Services Director, John/Jane Doe Physicians, John/Jane Doe Physician Assistants, John/Jane Doe Nurse Administrators, John/Jane Doe Nurse Practitioners, and John/Jane Doe Nurses denied Plaintiff access to timely and appropriate medical care and treatment for his objectively serious and critical medical condition.

89.     As part of the said conspiracy and cover-up, upon information and belief, a disciplinary infraction and/or citation and/or slip was issued to Plaintiff. To justify the infraction, the detention officers falsely claimed that Plaintiff was noncooperative with Lieutenant Detention Officer Scimia, Lieutenant Detention Officer O'Neil, Lieutenant Detention Officer Smith, Lieutenant Detention Officer Heritage, Lieutenant Detention Officer Spiotta, Lieutenant Detention Officer Kowalski, Captain

Detention Officer Torres and Captain Detention Officer Vohwinkel, and Detention Officers John Doe 1-5, and they denied Plaintiff access to timely and appropriate medical care and treatment for his objectively serious and critical medical condition.

90.    As part of the conspiracy and cover-up, upon information and belief, the detention defendants claimed their actions did not cause Plaintiff's injuries.

91.    Defendant nurses then and there existing on the date of incident and time of incident witnessed the severely injured Plaintiff in the SHU and/or infirmary yet offered no further assistance.

92.    As a result of the detention officers' negligent, reckless, unnecessary and/or excessive use of force, Plaintiff suffered physical injuries of an objectively serious nature; however, the failure of the defendants to request, authorize, make arrangements and provide transportation for, and/or provide timely and adequate medical care and treatment to Plaintiff caused Plaintiff to maliciously suffer additional and prolonged pain and suffering and severely threatened Plaintiff's life.

93.    Plaintiff's medical condition was of such gravity that it can be objectively considered a serious medical condition. Defendants, by ignoring his requests for treatment, acted with deliberate indifference. Defendants, by ignoring all available signs that Plaintiff was in physical distress, acted with deliberate indifference. Defendants failure to act also aggravated and exacerbated conditions that could have been remedied with care.

94.    Defendants the Health Services Director, John/Jane Doe Physicians, John/Jane Doe Physician Assistants, John/Jane Doe Nurse Administrators, John/Jane Doe Nurse Practitioners, and John/Jane Doe Nurses, Michael T. Phillips, Todd Tryon, as well as supervisory officers and the command structure of BUFFALO FEDERAL DETENTION FACILITY, and AKIMA GLOBAL SERVICES LLC, knew that the pattern of harassment, intimidation, physical abuse, cover-up, and denial of medical care, as described above, existed at BUFFALO FEDERAL DETENTION FACILITY. These

defendants, by failing to act upon this pattern of brutality, acquiesced in the known unlawful behavior of their correctional and medical staff. The prevalence of these practices and general knowledge of their existence, and the failure of these defendants to take remedial action despite the fact that the foregoing has been persistently brought to their attention, constitutes deliberate indifference to the rights and safety of all individuals in their custody, and Plaintiff in particular. These Defendants' conduct was a substantial factor in the continuation of such violence and proximate cause of the incident and injuries alleged herein.

95.     Defendants the Health Services Director, John/Jane Doe Physicians, John/Jane Doe Physician Assistants, John/Jane Doe Nurse Administrators, John/Jane Doe Nurse Practitioners, and John/Jane Doe Nurses, Michael T. Phillips, Todd Tryon, as well as supervisory officers and the command structure, and all relevant agents, employees and independent contractors of AKIMA GLOBAL SERVICES LLC, have consistently failed to investigate allegations such as those contained herein and to discipline officers and medical staff who have violated directives, guidelines, and/or the law. In the rare instance where an investigation does occur, these investigations are routinely clouded by a bias in favor of detention officers and medical staff and against detainees. Furthermore, officers and medical staff who are known to have violated an individual's civil rights in one detention center or command are often transferred by AKIMA GLOBAL SERVICES LLC, to another part of the detention center or command rather than be disciplined, demoted, or terminated, thereby allowing violence and other abuses to continue.

96.     As set forth above, the subject incidents, as well as the detention officers and medical staff on duty who ignored, acquiesced, joined and/or were complicit in same, constituted an unnecessary, negligent, reckless, unreasonable, and excessive use of force.

97.     On each occasion claimed herein, Defendants acted with deliberate indifference to the

Case 1:21-cv-00013-ERK-JRC    Document 1-1    Filed 01/04/21    Page 25 of 31 PageID #: 76/2020
FILED: KINGS COUNTY CLERK 09/23/2020 03:47 PM
NYSCEF DOC. NO. 1

INDEX NO. 517976/2020
RECEIVED NYSCEF: 09/23/2020

Plaintiff's safety, security, health, and immediate medical needs.

98.     As a direct and proximate result of Defendants' deliberate indifference to Plaintiff's objectively serious medical conditions, Plaintiff's resulting physical pain and suffering were gratuitously and maliciously exacerbated and his recovery compromised.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST THE DEFENDANTS FOR NEGLIGENCE

99.     Plaintiff repeats and realleges paragraphs 1 through 98 above as if set forth fully herein.

100.    The Defendants, by and through their agents, servants and/or employees, had a duty to exercise reasonable care in their interactions with plaintiff.

101.    Said agents, servants and/or employees were negligent, reckless and failed to use reasonable care during the aforesaid incident.

102.    Said agents, servants and/or employees were careless and negligent by, *inter alia*, (1) failing to adequately investigate the circumstances before confronting Plaintiff; (2) violating their own rules, guidelines and procedures in connection with the incident including, but not limited to, the Performance-Based National Detention Standards; (3) providing negligent medical care; (4) negligently investigating the incident after it occurred; (5) failing to use reasonable care in interacting with plaintiff before, during and after the incident; and (6) negligently inflicting plaintiff's injuries.

103.    The aforesaid occurrence and the results thereof were due to and caused by the joint, several and concurrent negligence of the defendants and their agents, servants, employees and/or licensees in negligently, carelessly and recklessly causing, allowing and/or permitting the plaintiff to be willfully, maliciously and with gross negligence physically detained, verbally abused, abused, and mentally tortured.

104.    That one or more of the exceptions of §1602 of the Civil Practice Law and Rules do apply to the within action.

105.    That as a result of the aforesaid conduct, plaintiff **MUTHER MAHMOUD** was rendered sick, sore lame and disabled; sustained severe and painful personal injuries; sustained severe nervous shock, mental anguish, severe emotional distress and great physical pain; was confined to bed and home for a long period of time; was compelled to undergo medical and psychological treatment; has suffered loss of enjoyment of life; was prevented from engaging in his usual occupation for a long period of time; and since some of his injuries are of a permanent nature, he will continue to suffer similar damages in the future.

106.    That by reason of the foregoing, plaintiff demands damages in an amount which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction herein.

### AS AND FOR A SECOND CAUSE OF ACTION AGAINST AKIMA GLOBAL SERVICES LLC FOR NEGLIGENT TRAINING

107.    Plaintiff repeats and realleges paragraphs 1 through 106 above as if set forth fully herein.

108.    Defendant Akima Global Services LLC grossly failed to train and adequately supervise their employees in the proper procedures and protocols for, *inter alia*, interacting with detainees, investigations, truthfulness in reporting, reporting misconduct of other employees, use of force, reasonable care in restraining detainees, compliance with applicable rules, laws and procedures, investigations, and proper documentation, especially where, as here, the subject has not committed a crime, has not violated any rule or procedure and has not resisted.

109.    The foregoing acts, omissions and systemic failures are customs and policies of Defendant Akima Global Services LLC, which caused the subject officers and employees to negligently handle the subject incident, and subjected Plaintiff to extreme pain and injury.

110.    That as a result of the aforesaid conduct, plaintiff **MUNTHER MAHMOUD** was rendered sick, sore, lame and disabled; sustained severe and painful personal injuries; sustained severe nervous shock, mental anguish, severe emotional distress and great physical pain; was confined to bed and home for a long period of time; was compelled to undergo medical and psychological treatment; has suffered loss

of enjoyment of life; was prevented from engaging in his usual occupation for a long period of time; and since some of his injuries are of a permanent nature, he will continue to suffer similar damages in the future.

111.     That by reason of the foregoing, plaintiff demands damages in an amount which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction herein.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST
## AKIMA GLOBAL SERVICES LLC FOR NEGLIGENT HIRING

112.     Plaintiff repeats and realleges paragraphs 1 through 111 above as if set forth fully herein.

113.     That at the time of said incident, the agents, officers, servant and/or employees of Akima Global Services LLC were acting in the course and general scope of their employment by Akima Global Services LLC.

114.     That upon information and belief, Akima Global Services LLC knew, or should have known, that the agents, servant and/or employees were unfit for the employment for which they were hired.

115.     That by hiring and retaining the aforesaid agents, servants and/or employees, the Defendant Akima Global Services LLC created a situation where it was likely that said agents, servants and/or employees would, as a result of their history, character, temperament and propensity, commit the claims asserted herein.

116.     That Akima Global Services LLC, knew or should have known in the exercise of due and reasonable care that the aforesaid agents, servants and/or employees were vicious, potentially dangerous and would commit the claims asserted herein.

117.     That Akima Global Services LLC were negligent in the hiring and supervision of the aforesaid agents, servants and/or employees.

118.     That as a result of the aforesaid conduct, plaintiff **MUNTHER MAHMOUD,** was rendered sick, sore, lame and disabled; sustained severe and painful personal injuries; sustained severe nervous

shock, mental anguish, severe emotional distress and great physical pain; was confined to bed and home for a long period of time; was compelled to undergo medical and psychological treatment; has suffered loss of enjoyment of life; was prevented from engaging in his usual occupation for a long period of time; and since some of his injuries are of a permanent nature, he will continue to suffer similar damages in the future.

119.     That by reason of the foregoing, plaintiff demands damages in an amount which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction herein.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANTS FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

120.     Plaintiff repeats and realleges paragraphs 1 through 119 above as if set forth fully herein.

121.     The Defendants breached duties owed to plaintiff which exposed plaintiff to an unreasonable risk of bodily and psychological injury.

122.     Plaintiff sustained bodily and psychological injury.

123.     That as a result of the aforesaid conduct, plaintiff **MUTHER MAHMOUD** was rendered sick, sore lame and disabled; sustained severe and painful personal injuries; sustained severe nervous shock, mental anguish, severe emotional distress and great physical pain; was confined to bed and home for a long period of time; was compelled to undergo medical and psychological treatment; has suffered loss of enjoyment of life; was prevented from engaging in his usual occupation for a long period of time; and since some of his injuries are of a permanent nature, he will continue to suffer similar damages in the future.

124.     That by reason of the foregoing, plaintiff demands damages in an amount which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction herein.

Case 1:21-cv-00013-ERK-JRC   Document 1-1   Filed 01/04/21   Page 29 of 31 PageID #: 93

WHEREFORE, Plaintiff demands judgment against Defendants in a sum which exceeds the jurisdictional limit of all lower Courts which would otherwise have jurisdiction, together with the costs and disbursements of this action.

Dated: Garden City, New York
     September 23, 2020

CHOPRA & NOCERINO, LLP.
BY:

_____

BRETT L. KULLER, ESQ.
Attorneys for Plaintiff
Address and Telephone Number
100 Quentin Roosevelt Blvd., Unit 107
Garden City, New York 11530
(212) 868-3600
File No. 1496.RJBK

STATE OF NEW YORK, COUNTY OF NASSAU           ss:

I, the undersigned, an attorney admitted to practice in the courts of New York State, state under penalty of perjury that I am one of the attorneys for the Plaintiff in the within action; I have read the foregoing VERIFIED SUMMONS AND COMPLAINT and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe to be true.  The reason this verification is made by me and not by my client, is that my client is not presently in the County where I maintain my offices.  The grounds of my belief as to all matters not stated upon my own knowledge are the materials in my file and the investigations conducted by my office.

Dated: Garden City, New York
       September 23, 2020


                                            BRETT L. KULLER

Index No.:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
============================================
MUNTHER MAHMOUD,

                  Plaintiff,

       -against-

AKIMA GLOBAL SERVICES, LLC,
MICHAEL T. PHILLPS, TODD TRYON,
DETENTION OFFICER CAPTAIN VOHWINKEL,
DETENTION OFFICER CAPTAIN TORRES,
DETENTION OFFICER LIEUTENANT O'NEIL,
DETENTION OFFICER LIEUTENANT SMITH,
DETENTION OFFICER LIEUTENANT HERITAGE,
DETENTION OFFICER LIEUTENANT SPIOTTA,
DETENTION OFFICER LIEUTENANT KOWALSKI,
DETENTION OFFICER LIEUTENANT SCIMIA,
BUFFALO FEDERAL DETENTION FACILITY
HEALTH SERVICES DIRECTOR JOHN/JANE DOE,
JOHN/JANE DOE PHYSICIANS,
JOHN/JANE DOE PHYSICIAN ASSISTANTS,
JOHN/JANE DOE NURSES, and
DETENTION OFFICERS JOHN DOE 1-5,

                  Defendants.
============================================

SUMMONS AND VERIFIED COMPLAINT

============================================

CHOPRA & NOCERINO, LLP.
Attorneys for Plaintiffs
Office and Post Office Address, Telephone
100 Quentin Roosevelt Blvd, Unit 107
Garden City, New York 11530
T: 212-868-3600
F: 212-868-1300
File No.: 1496.RJBK

============================================