UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

―――――――――――――――――――――――

MUNTHER MAHMOUD,

              Plaintiff,

– against –

AKIMA GLOBAL SERVICES, LLC,
UNITED STATES OF AMERICA,
MICHAEL T. PHILLIPS, TODD TRYON,
DETENTION CENTER OFFICER,
CAPTAIN VOHWINKEL, DETENTION
OFFICER CAPTAIN TORRES,
DETENTION OFFICER LIEUTENANT
O'NEIL, DETENTION OFFICER
LIEUTENANT SMITH, DETENTION
OFFICER LIEUTENANT HERITAGE,
DETENTION OFFICER LIEUTENANT
SPIOTTA, DETENTION OFFICER
LIEUTENANT KOWALSKI,
DETENTION OFFICER LIEUTENANT
SCIMIA, BUFFALO FEDERAL
DETENTION FACILITY, HEALTH
SERVICES DIRECTOR JOHN/JANE
DOE, JOHN/JANE DOE PHYSICIANS,
JOHN/JANE DOE PHYSICIAN
ASSISTANTS, JOHN/JANE DOE
NURSES, DETENTION OFFICERS
JOHN DOE 1-5,

              Defendants.

―――――――――――――――――――――――

**NOT FOR PUBLICATION**

**MEMORANDUM & ORDER**

1:21-cv-13 (ERK) (JRC)

KORMAN, *J.*:

    Plaintiff Munther Mahmoud sues to recover for injuries he allegedly suffered during a violent altercation on June 9, 2016 while he was detained at the Buffalo

1

Federal Detention Facility. Defendant Akima Global Services, LLC ("Akima")—which operated the detention facility—moves for summary judgment, arguing that the record evidence unambiguously shows that the June 9, 2016 incident was not violent and did not cause the injuries Mahmoud alleges.

## BACKGROUND

As he tells it, Munther Mahmoud was the victim of horrific violence at the hands of officers at the Buffalo Federal Detention Facility. Mahmoud alleges that, on June 9, 2016, after a verbal altercation, detention officers entered his cell and handcuffed him. Verified Complaint ¶¶ 2–3, ECF No. 1-1. Then, the officers "began getting riled up and talking disrespectfully" to him. *Id.* ¶ 4. This "verbal abuse" became physical and the "officers negligently grabbed [Mahmoud's] neck, back and arms and jerked, shoved, quickly moved and harshly thrusted [his] neck and back forward while lifting his cuffed wrists/arms in an upward fashion with extreme force." *Id.* ¶¶ 4–5. As this went on, Mahmoud "begged for [the officers] to release [him] due to the excruciating pain he had immediately felt and continued to feel." *Id.* ¶ 5. His entreaties, however, were rejected, and the officers "continued to toy with [him] by negligently and violently jerking and propelling his arms even further upward so that the pain was unbearable." *Id.* ¶ 6. As a result of this violence, Mahmoud continues, he "sustained bilateral shoulder tears and impingement, a right knee tear, fractures to the spine, cervical and lumbar herniations with tearing,

2

radiculopathy and impingement." *Id.* ¶ 8. And, adding insult to injury, the detention facility failed to provide him the "proper treatments" for his injuries. *Id.* ¶ 9.

After an initial suit related to this incident was dismissed, *see Mahmoud v. Akima Glob. Servs., LLC*, No. 18-CV-485, 2020 WL 3895257 (W.D.N.Y. July 10, 2020), Mahmoud commenced this suit in New York State Supreme Court (Kings County). He asserts various state tort law causes of action against the detention facility, Akima, and numerous individuals that worked at the detention facility. Those individuals include Michael T. Phillips, the Field Office Director at the detention facility, and Todd Tryon, a Supervisory Detention and Deportation Officer at the detention facility. The United States removed the case, averring that Tryon and Phillips "were employees of the United States Immigration and Customs Enforcement Agency ("ICE")" and that "those defendants were acting in the course and scope of their employment as deemed employees of ICE" during the alleged events. *See* Notice of Removal ¶ 3, ECF No. 1. The United States explained that it therefore is substituted as the defendant for Tryon and Phillips under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2679, and that it could remove the case to federal court under §§ 1442(a)(1) and 2679(d)(2). *Id.* ¶¶ 4–8.

Akima now moves for summary judgement. It argues that security camera footage from the date in question shows that Mahmoud invented his account of the violent altercation and his resultant injuries that he alleges in his verified complaint.

The security footage shows the *verbal* altercation Mahmoud describes. Exhibit A to Affidavit of Detention Lieutenant Richard O'Neil (*see* ECF No. 24-4), File #7 at 0:17–1:13. That altercation involves no physical contact between Mahmoud and detention officers and concludes with Mahmoud entering his cell on his own power. *Id.* at 1:03–1:13. A few minutes later, two detention officers enter Mahmoud's cell for a mere fifteen seconds, with the door remaining open, and emerge with Mahmoud in handcuffs. *Id.* at 6:02–6:16. One of these two officers remains visible while in Mahmoud's cell and does not appear to be engaged in any violent movement. After exiting his cell, Mahmoud displays no apparent physical distress or difficulty walking. *Id*. at 6:17–6:28. Mahmoud, escorted by detention officers, then walks across the detention facility for a minute and a half, again with no apparent difficulty or physical distress. Exhibit A to Affidavit of Detention Lieutenant Richard O'Neil, File #5 at 6:38–6:47; *id.*, File #1 at 6:47–6:56; *id.*, File #4 at 6:56–7:10; *id.*, File #0 at 7:10–7:46; *id.*, File #2 at 7:47–8:01; *id.*, File #6 at 8:01–8:11.

On July 21, 2021, while this motion was still pending, Mahmoud's lawyers were allowed to withdraw from their representation. A week later, Akima sent Mahmoud all the materials filed in connection with this motion as well as the Notice to Pro Se Litigant who Opposes a Motion for Summary Judgement required by Local Rule 56.2. *See* ECF Nos. 30–31. These materials were delivered to Mahmoud on

4

July 29, 2021. *See* ECF No. 31 at 5. Mahmoud was then granted an extension to respond to this motion until October 4, 2021, but he failed to do so.

## JURISDICTION

In cases where a plaintiff asserts tort claims against federal officers for action taken within the scope of their employment, the FTCA provides that the United States is substituted as the defendant and that federal courts have exclusive jurisdiction over those claims. 28 U.S.C. §§ 1346(b), 2679. When "any civil action or proceeding [is] commenced upon such [a] claim in a State court," that action or proceeding "shall be removed without bond at any time before trial by the Attorney General to the district court of the United States" covering the region where the suit was filed. *Id.* § 2679(d)(2). Additionally, § 1442 allows the "United States or any agency thereof or any officer . . . of the United States or of any agency thereof" to remove to federal court a civil action "relating to any act under color of such office." *Id.* § 1442(a)(1).

In this case, Mahmoud asserts tort claims against Phillips and Tryon, both federal officers, for actions taken within the scope of their employment. The United States therefore properly removed this case under §§ 1442(a)(1) and 2679(d)(2). Granted, Mahmoud also asserts claims against nonfederal parties, including Akima, but precedent establishes that when a federal defendant removes a case under § 1442(a) and that case includes claims against both federal and nonfederal

5

defendants, the entire case is removed, not just the claims against the federal defendant. *See Bradford v. Harding*, 284 F.2d 307, 310 (2d Cir. 1960); *Allman v. Hanley*, 302 F.2d 559, 562 (5th Cir. 1962) ("[R]emoval by single Federal officer ends the power of the state court to issue process because the entire case is then removed as to all parties whether joined in the petition or not." (citing *Bradford*, 284 F.2d 307)); *Ely Valley Mines, Inc. v. Hartford Accident & Indem. Co.*, 644 F.2d 1310, 1315 (9th Cir. 1981) (similar); *Iowa Pub. Serv. Co. v. Iowa State Com. Comm'n*, 407 F.2d 916, 918 n.3 (8th Cir. 1969) (similar); *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034–35 (10th Cir. 1998). The same result should apply to claims removed under § 2679(d)(2). That provision indicates that the object of removal is not merely the claim against a federal defendant, but rather the "*action or proceeding commenced upon such [a] claim.*" 28 U.S.C. § 2679(d)(2) (emphasis added). Thus, Mahmoud's entire case, including his claims against Akima, has been properly removed pursuant to §§ 1442(a)(1) and 2679(d)(2).[1]

---

[1] Additionally, even if Mahmoud could not bring his claims against Akima in federal court standing alone, those claims fall within the constitutional limits of this court's jurisdiction because those claims and Mahmoud's claims against the federal defendants—which are governed by the FTCA—derive from "a common nucleus of operative facts." *Almenares v. Wyman*, 453 F.2d 1075, 1083–84 (2d Cir. 1971) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). And for that same reason, those claims fall within this court's supplemental jurisdiction under 28 U.S.C. § 1367.

## DISCUSSION

To obtain summary judgment, a movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. Indeed, "this standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Id.* at 250. The "question" to be answered on a motion for summary judgment, therefore, is "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it." *Id.* at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)).

Mahmoud's claims all arise from alleged violence he suffered in his cell on June 9, 2016 and the subsequent lack of treatment for the injuries he sustained during that incident. Mahmoud sets out those allegations in a "[a] verified complaint [which] is to be treated as an affidavit for summary judgment purposes, and [those

7

allegations] therefore will be considered in determining whether [genuine] material issues of fact exist." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

Yet the security footage Akima submitted, the authenticity of which Mahmoud does not challenge, shows that two officers entered Mahmoud's cell for only fifteen seconds, with the door remaining open, and emerged with Mahmoud in no apparent physical distress and able to walk across the facility without difficulty. Although the footage of the fifteen seconds the officers were in Mahmoud's cell was taken from some distance, one of the officers in the cell can be seen and does not appear to be engaged in any violent movement. Thus, Akima's footage flatly contradicts Mahmoud's version of events as described in his complaint—Mahmoud's only evidence in this case. No "reasonable jury could return a verdict for" Mahmoud, *Anderson*, 477 U.S. at 248, based on an allegation that in the span of fifteen seconds: (1) "the detention officers asked that [Mahmoud] . . . put his hands behind his back" (2) Mahmoud "complied, turned around . . . and was cuffed by the [] officers," (3) the "officers then began getting riled up and talking disrespectfully" to Mahmoud, (4) Mahmoud "attempted to defuse the situation by speaking calmly," (5) the officers then "negligently grabbed [Mahmoud's] neck, back and arms and jerked, shoved, quickly moved and harshly thrusted [his] neck and back forward while lifting his cuffed wrists/arms in an upward fashion," (6) Mahmoud "begged for [the officers] to release" him, and, finally, (7) the "officers continued to toy with [Mahmoud] by

8

negligently and violently jerking and propelling his arms even further upward," Verified Complaint ¶¶ 3–6. The security footage not only shows that this violence never occurred, but it also shows that Mahmoud was immediately able to walk across the detention facility with no apparent difficulty, an effort which is totally inconsistent with the allegation in Mahmoud's complaint that he "sustained bilateral shoulder tears and impingement, a right knee tear, fractures to the spine, cervical and lumbar herniations with tearing, radiculopathy and impingement." Verified Complaint ¶ 8. Thus, "there can be but one reasonable conclusion as to the verdict" in this case: Akima is not liable to Mahmoud. *Anderson*, 477 U.S. at 250.

## CONCLUSION

Akima's motion for summary judgment is GRANTED. Because the decision to grant Akima summary judgment is based on a determination that no reasonable jury could credit the allegations that represent the gravamen of Mahmoud's claims against all defendants, the Clerk of Court is directed to enter judgment in favor of all defendants. Although only Akima moved for summary judgment, "[d]istrict courts have the discretion to grant summary judgment sua sponte, even without notice in certain circumstances." *Jian Yang Lin v. Shanghai City Corp*, 950 F.3d 46, 49 (2d Cir. 2020) (internal quotation marks omitted). Such a circumstance arises when "the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to

be tried, and that the party for whom summary judgment is rendered is entitled thereto as a matter of law." *Id.* (internal quotation marks omitted). Faced with Akima's motion, Mahmoud had an opportunity and an obligation to demonstrate the presence of a genuine dispute regarding his alleged assault, which forms the factual basis of the claims against all the defendants. Yet he failed to do so for the reasons stated above.

Moreover, Mahmoud's motion for appointment of counsel is DENIED because he has not made the threshold showing necessary to justify such relief. *See Cooper v. A. Sargenti Co.*, 877 F.2d 170, 174 (2d Cir. 1989). Indeed, although I do not rely on it in granting Akima's motion for summary judgment, the fact that, despite numerous attempts, Mahmoud has not been able to find a lawyer to take his case in an area where lawyers are entitled to fees for successful representations confirms the total lack of merit to Mahmoud's case.

**SO ORDERED.**

*Edward R. Korman*
Edward R. Korman
United States District Judge

Brooklyn, New York
January 18, 2022